IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILNERSON OCCELIN,** | : | |
| Petitioner | : | CIVIL NO. 1:CV-09-00164 |
| v. | : | (Judge Rambo) |
| **THE DISTRICT DIRECTOR FOR IMMIGRATION CUSTOM ENFORCEMENT, THE DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | : | |
| Respondents | : | |

# **M E M O R A N D U M**

Before the court is Petitioner Wilnerson Occelin's ("Occelin") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Occelin is challenging his continued detention pending his removal proceedings. The petition has been briefed and is ripe for disposition. For the reasons that follow, the court finds it necessary to schedule a hearing on the petition.

## I. **Background**

Occelin, a native and citizen of Haiti, entered the United States on March 14, 1996, on a student visa, but was subsequently granted lawful permanent resident status under § 245(a) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1255(a), as amended. (Doc. 1-2, Ex. C, Notice to Appear.)

On September 3, 2003, Occelin was convicted in the Supreme Court of the State of New York for criminal possession of stolen property in the third degree, in violation of section 165.50 New York's penal code. (*Id*.) He was sentenced to a term of imprisonment of one (1) to three (3) years. (*Id*.)

On July 2, 2007, the United States Immigration and Customs Enforcement ("ICE") issued a "Notice to Appear" informing Occelin that he was subject to removal under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), as amended, because he had been convicted of an aggravated felony. (*Id*.) Also on July 2, 2007, ICE issued a Notice of Custody Determination informing Occelin that he would be detained and his detention was mandated by the INA. (Doc. 1-2, Ex. C, Notice of Custody Determination.) The notice further informed Occelin that an immigration judge ("IJ") could not review the detention status. (*Id*.) Upon his release from state custody, Occelin was served with the Notice to Appear and the Notice of Custody Determination on August 7, 2007 and placed into ICE custody. (Doc. 1-2, Ex. C.)

On October 16, 2007, Occelin filed an Application for Certificate of Citizenship, Form N-600, with the United States Citizenship and Immigration Services ("USCIS"), claiming he is eligible for derivative citizenship through the

naturalization of his father. (Doc. 1-2, Ex. D, Nov. 28, 2007 Notice of Decision.) On November 28, 2007, USCIS issued a decision denying Occelin's application. (*Id*.) Occelin filed another Application for Certificate of Citizenship on June 25, 2008, again claiming derivative citizenship through the naturalization of his father. (Doc. 1-2, Ex. D, Sept. 23, 2008 Notice of Decision.) On September 23, 2008, USCIS denied Occelin's application because he failed to establish that his parents were legally separated at the time of his father's naturalization. (*Id*.) Occelin filed a motion to reconsider USCIS's September 23, 2008 denial on October 14, 2008. (Doc. 10-2, Ex. 4, Decision on Motion to Reconsider Form N-600.) On January 20, 2009, USCIS denied Occelin's motion for reconsideration, finding that Occelin had failed to establish that his father's marriage to another woman in New York constituted a legal separation between his father and mother under Haitian common law or New York law. (*Id*.) Because Occelin's parents were married under common law but were never legally separated, USCIS concluded that he did not derive citizenship through his father's naturalization. (*Id*.)

On November 5, 2008, Occelin was denied release from ICE custody because his aggravated felony theft conviction, which required a term of imprisonment exceeding one year, subjected him to mandatory custody under section 236(c)(1)(B)

of the INA, 8 U.S.C. § 1226(c)(1)(B), as amended. (*See* Doc. 1-2, Ex. E, Ruling on Bond.) On that same day, an immigration judge ("IJ") denied Occelin a change in custody status based on the mandatory custody requirement of the INA. (Doc. 10, Ex. 1, Order of IJ with Respect to Custody.) Further, on December 2, 2008, an IJ denied bond to Occelin based on the mandatory custody requirement. (Doc. 1-2, Ex. E.)

Occelin appealed the IJ's November 5, 2008 decision denying his request for a change in custody status to the Board of Immigration Appeals ("BIA"). (Doc. 1-2, Ex. F, BIA Decision.) The BIA affirmed, concluding that the IJ had not erred in denying Occelin's request. (*Id*.) Specifically, the BIA found that Occelin's continued detention, regardless of length, was not indefinite because that detention under section 236(c) of the INA would terminate upon completion of Occelin's removal proceedings. (*Id*.) Further, the BIA found no showing that the completion of Occelin's removal proceedings had been delayed by the government's conduct. (*Id*.) It stated, "A constitutional detention cannot be transformed into an unconstitutional detention solely because an alien makes tactical decisions, which are within his or her rights, which necessarily serve to lengthen the time required to complete the alien's removal proceedings." (*Id*.)

On January 28, 2009, the IJ issued an order of removal of Occelin from the United States to Haiti. (Doc. 10-2, Ex. 2, Order of the IJ.) In that order, the IJ also granted Occelin's request for deferral of removal pursuant to the Convention on Torture ("CAT"). (*Id*.) On February 2, 2009, both Occelin and ICE appealed the decision of the IJ to the BIA. (Doc. 10-2, Ex. 3, Filing Receipt for Appeal.) To date, the appeals have yet to be adjudicated.

Occelin filed, *pro se*, the instant petition on January 27, 2009. (Doc. 1.) On March 2, 2009, an order to show cause was issued, directing Respondents to respond to the petition. (Doc. 9.) Respondents filed a response on March 23, 2009. (Doc. 10.) On April 7, 2009, counsel entered appearances on behalf of Occelin, and filed a reply to the response. (Doc. 15.) After the court granted Respondents' motion to supplement the response to the petition, (Doc. 21), Respondents further responded to the petition on April 17, 2009, (Doc. 22). Another counsel entered an appearance on behalf of Occelin on April 23, 2009, (Doc. 24), and a supplemental reply brief was filed on April 24, 2009, (Doc. 25). This matter is now ripe for disposition.

## II. Discussion

As set forth above, Occelin was initially detained pursuant to § 1226(c). In his petition, Occelin challenges his continued detention as a pre-final order of removal

5

detainee on the basis that his detention is unconstitutional. Specifically, Occelin argues that because § 1226(c) does not authorize prolonged mandatory detention, his detention is instead governed by § 1226(a). As a result, he should be released, or at the very least provided a bond hearing, under § 1226(a) while his removal proceedings are pending. Respondents maintain that Occelin's detention is lawful in that he continues to be subject to mandatory detention under §1226(c), and he has not established that he is subject to unreasonably prolonged detention. Thus, what the parties dispute is whether at some point § 1226(c) no longer governed Occelin's detention.

The apprehension and detention of aliens, pending removal decisions, are governed by the provisions of section 236 of the INA, 8 U.S.C. § 1226, as amended. Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States.[1] Although § 1226(a) permits discretionary release of aliens on bond, §

---

[1] 8 U.S.C. § 1226(a) provides, in part,

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General - -
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on - -

6

1226(c)(1) states that "The Attorney General shall take into custody any alien who . . . (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1). The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. *See* § 1226(c)(2). Further, an alien detained under § 1226(c) is not given a bond hearing before an IJ, whereas a noncriminal alien, who is detained under § 1226(a), is afforded such a hearing. *See* §§ 1226(a), (c). As a result, an alien detained under § 1226(c) does not have an opportunity to show, as a noncriminal alien would, that he does not pose a danger to the community or a flight risk. *See* § 1226(c).

The United States Supreme Court held in *Demore v. Kim*, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution. In *Demore*, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him. The Supreme Court held that detention of lawful

---

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole.

7

permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation proceedings. *Id*. at 523-24. In doing so, the Court noted that detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." *Id*. at 528.

However, the Supreme Court's holding in *Demore*, as noted in *Madrane v. Hogan*, 520 F. Supp. 2d 654 (M.D. Pa. 2007), is "narrow[ ] . . . grounded in repeated reference" to the brevity of removal proceedings. *Id*. at 664. In *Demore*, the Supreme Court recognized that § 1226(c) was intended only to "govern[ ] detention of deportable criminal aliens *pending their removal proceedings*," which the Court stressed typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. *Demore*, 538 U.S. at 527-28 (emphasis in original).

In the instant case, Occelin has already prevailed on his CAT claim and presently the BIA is considering both parties' appeals of the decision to grant a deferral of removal under Article III of CAT. However, as Occelin points out, the

8

BIA has yet to issue a briefing schedule and there is no set time frame in which the BIA must decide his case. (Doc. 15 at 13.) Thus, his current appeal and any further appellate proceedings could take a significant amount of time, time beyond the twenty-three (23) months Occelin has already spent in ICE custody. *See Mandrane*, 520 F. Supp. 2d at 667 (expressing concern that "the administrative and appellate process that has yet to be exhausted may be considerably time-consuming"). In light of these facts and the forecast of additional future appeals or proceedings that could cause Occelin to be detained for many months in addition to the nearly two years he has already been held in custody, the court is not inclined to accept Respondents' argument in favor of continued detention based solely on the mandatory language of § 1226(c), particularly where the Supreme Court in *Demore* did not expressly contemplate the constitutionality of such prolonged detention, and where Respondents have offered no other compelling justification or authority for such prolonged detention of Occelin.

Accordingly, the court finds it appropriate and necessary to hold a hearing on Occelin's habeas petition. At the time of the hearing, Respondents shall be prepared to provide justification for Occelin's continued detention, including, but not limited

9

to, evidence demonstrating his potential risk of flight and potential danger to the community in the event he is ordered released.

An appropriate order follows.

                                                s/Sylvia H. Rambo
                                              United States District Judge

Dated: June 17, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILNERSON OCCELIN,** | : | |
| | : | |
| Petitioner | : | CIVIL NO. 1:CV-09-00164 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| **THE DISTRICT DIRECTOR FOR IMMIGRATION CUSTOM ENFORCEMENT, THE DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | : | |
| | : | |
| Respondents | : | |

# **O R D E R**

**AND NOW**, this 17th day of June, 2009, **IT IS HEREBY ORDERED THAT** the court will convene a hearing on Petitioner's petition for writ of habeas corpus on Tuesday, July 28, 2009, at 10:00 a.m., in Courtroom Number 3, United States Federal Building, 228 Walnut Street, Harrisburg, Pennsylvania.

                                                    s/Sylvia H. Rambo
                                                  United States District Judge